AMERICAN INSURANCE CO. OF TEXAS *v.*
JOHN HARKEY, INSURANCE COMMISSIONER

5-4978                               445 S. W. 2d 84

Opinion delivered October 6, 1969

*Smith, Williams, Friday & Bowen* and *Jerry T. Light,* for appellant.

*Spitzbery, Mitchell & Hays,* for appellee.

J. FRED JONES, Justice. This appeal by American Insurance Co. of Texas is from a summary judgment in favor of the plaintiff appellee, Insurance Commissioner of Arkansas, for premium taxes on insurance premiums collected by the company in Arkansas during 1966 and 1967.

American is a foreign insurance company and held a certificate of authority to transact business in the

state of Arkansas until the certificate was revoked May 1, 1967. In the trial court American contended that it owed no premium tax because of the revocation of its certificate. The Commissioner contended that the revocation had no bearing on liabilty for the tax he claimed was due and unpaid.

The trial court agreed with the Commissioner and rendered judgment against American for $8,804.11 plus interest for tax due on March 1, 1967, for the calendar year 1966, and for $9,296.48 plus interest for the premium tax due on March 1, 1968, for the calendar year 1967.

American relies on the following points for reversal:

"The revocation of the appellant's certificate of authority absolved it of liability for any premium taxes.

The imposition of a 1968 premium tax based on receipts for the calendar year 1967 is not authorized and would make Ark. Stats. § 66-2302 unconstitutional in application."

On this appeal American argues that:

"The sole issue presented with respect to the premium tax due March 1, 1967, is whether the tax is to be paid in order to transact insurance business from May 1, 1967, to April 30, 1968, or, for having transacted insurance business from May 1, 1966, to April 30, 1967. If the former is the proper construction, then the Appellant owes no premium tax since its Certificate of Authority for that period of time was revoked."

We agree with the trial court, and hold that the premium tax due on March 1, 1967, was for the privilege exercised during 1966. Both sides have cited several

cases from other jurisdictions bearing on the classification of premium taxes levied against insurance companies, but in arriving at the conclusion we have reached, we rely on the plain words of our own statute, Ark. Stat. Ann. § 66-2302 (Repl. 1966), the pertinent parts of which are as follows:

"(1) Each authorized foreign or alien insurer, and each formerly authorized foreign or alien insurer with respect to premiums so received while an authorized insurer in this State, shall file with the Commissioner on or before March 1 each year a report . . . showing . . . total direct premium income . . . received by it during the preceding calendar year on account of policies and contracts covering property subjects, or risks located, resident, or to be performed in this State. . .

(2) Coincident with the filing of such tax report each such insurer shall pay to the State Treasurer through the Commissioner, as a tax imposed for the privilege of transacting business in this State, a tax upon such net premiums and net considerations, such tax to be computed thereon at the following rates·

(a) As to life insurance and disability insurance the tax rate shall be two and one-half (2½%) per cent.

(b) As to all other kinds of insurance the rate of tax shall be two (2%) per cent, except as provided in subsection (4) of this section."

It is plain to us that the statute refers to two classifications of insurance companies required to file their reports on or before March 1 each year; those companies still authorized to do business and those companies formerly authorized to do business. Each authorized company, as well as each formerly authorized company,

must file their respective reports on or before March 1 each year showing premiums received during the preceding calendar year. There is only one distinction in what each company must report. The authorized company must report on all premiums received by it in the preceding calendar year, and the formerly authorized company is required to report only "with respect to premiums so received while an authorized insurer in this state," or, in other words, premiums received by it while it was still authorized to do business in this state.

From the information in the record before us, American was a formerly authorized company on March 1, 1968. It was an authorized company until it became unauthorized by the revocation of its authority as of May 1, 1967. The record does not reveal when American first became authorized nor the length of time it remained authorized. The record does not reveal what tax, if any, American paid when it first became authorized or during the period of its authorization. The record is clear that American was authorized until May 1, 1967, and the statute is plain that it was liable for its privilege tax levied by statute on the premiums it collected during the period of time in each calendar year it was so authorized. When its authority was revoked, its liability for tax on premiums thereafter collected was revoked, but its liability for what it owed on premiums collected while it was still authorized to do business in Arkansas was not revoked.

The statute is plain, logical and fair. It authorizes the granting of a privilege to do business and for a tax based on the volume of business done under the privilege. No policies can be sold until authority to do business is granted. No premiums can be collected until policies are sold and no premium tax can be levied under the statute until after policies have been sold, premiums collected, and report made "with respect to premiums so received while an authorized insurer in this state."

What the statute actually authorizes, in plain everyday language, is a privilege to do business now, with the right to pay later.

The appellee seems to argue that by virtue of being once authorized to do business in the state of Arkansas, a foreign insurance company is fully apprised of the Arkansas statute and that such company which surrenders its charter, or has its charter revoked, continues to remain liable for an annual tax on premiums collected each calendar year as long as the policies remain in force and the premiums are paid. We reject this argument because the tax levied by the statute is based on premiums received while an authorized insurer in this state and is not based on premiums received *on policies sold* while an authorized insurer in this state. If the statute permits an unauthorized foreign insurance company to continue collecting premiums without paying taxes, that is a legislative problem and not a judicial one. The tax levied under the statute as written is a privilege tax as above stated and is not an income tax.

The record indicates that the $9,296.48 judgment for premium tax due for the calendar year ending December 31, 1967, was based on premiums received by American during the entire calendar year of 1967, including such premiums that may have been received between May 1, 1967, when its authority was revoked, and December 31, 1967, the end of the calendar year. After May 1, 1967, American was no longer an authorized insurer in this state and was not required under the statute to report as to premiums received after that date. The judgment of the trial court is affirmed as to the tax for the calendar year 1966, and this cause is remanded to the circuit court for a determination of, and entry of judgment for, the tax due on premiums collected by American while it was authorized to do business in Arkansas prior to May 1 during the calendar year 1967.

Affirmed in part and remanded.